74 Ill. App.3d 411 (1979)
393 N.E.2d 113
In re G.L.C., Alleged Delinquent Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
G.L.C., Respondent-Appellant.)
No. 15378.
Illinois Appellate Court  Fourth District.
Opinion filed August 8, 1979.
Richard J. Wilson and Don Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Marc D. Towler and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Reversed and remanded.
Mr. JUSTICE CRAVEN delivered the opinion of the court:
This cause comes before us on an appeal by the respondent minor from the termination of his probation and his commitment to the Department of Corrections.
On May 22, 1978, the minor was placed on probation for a period of two years, after having been adjudged a delinquent by the circuit court of Champaign County. In September 1978, a petition to revoke that probation was filed alleging that the respondent had violated conditions of his probation in failing to keep ordered appointments with the *412 probation officer and for disorderly conduct. The respondent contends that the State failed to prove by a preponderance of the evidence that he committed disorderly conduct, and that, in any event, the trial court abused its discretion in committing him to the Department of Corrections. The order must be reversed.
The only State witness testifying at the revocation hearing concerning the facts which gave rise to the allegation of disorderly conduct was an administrator at Urbana High School. He stated that respondent was involved in a skirmish with another student at the school on August 30, 1978, and that after respondent and the other student had been restrained and respondent had temporarily left the area, he returned carrying a bottle in his hand and stating that he was going to "crown" his opponent. The administrator then attempted to persuade respondent to come with him, but respondent refused and searched through a portion of the building for the other student. Respondent apparently entered two hallways leading to two classrooms but the record is not clear as to whether he actually entered either classroom. Respondent finally surrendered the bottle to other school personnel. When asked whether the minor's conduct had disturbed him, the administrator replied, "[Y]es, to some extent. And then no to another extent * * *," explaining that he was usually able to talk with respondent and calm him down but that such was not the case on that occasion.
The respondent's probation officer also testified at the hearing. Respondent had been placed on probation. The court had ordered that the minor report each day to his probation officer. During the period between the time he was placed on probation and August 7, 1978, the respondent failed to make three of the ordered daily reports.
 1 One of the elements of the offense of disorderly conduct is that the defendant knowingly act in an unreasonable manner so as to alarm or disturb another and to provoke a breach of the peace. (Ill. Rev. Stat. 1977, ch. 38, par. 26-1.) The only way in which the school administrator was disturbed was in his own lack of ability in this instance to control the minor's behavior. Even that statement was qualified by the administrator who did not say for certain that he was disturbed. This testimony standing alone, as it does in the record, does not support a finding, even by a mere preponderance, that the minor in fact committed the offense of disorderly conduct. There is simply a failure of proof on one element of the offense. The finding of a probation violation upon this ground is contrary to the manifest weight of the evidence. See In re Ephriam (1978), 60 Ill. App.3d 848, 377 N.E.2d 49.
 2 The State contends that even if this court reverses the finding of a probation violation predicated on the allegation of disorderly conduct, we should affirm the revocation on the basis that the respondent had *413 failed to report to his probation officer as ordered. (See People v. McCaster (1974), 19 Ill. App.3d 824, 313 N.E.2d 308; People v. Freeman (1964), 49 Ill. App.2d 464, 200 N.E.2d 146.) It is correct that the evidence in the record shows the respondent failed to report as ordered to his probation officer. It must be noted that the original order of probation designated the minor as a high-risk probationer and that he was required to report to the probation officer daily. That original order of probation was entered on May 22, 1978. Therefore, what is at issue is the minor's failure to report, on a daily basis, for only three days during the probation period. His failure to do so, under the circumstances, is simply not a sufficient ground to revoke probation and to transfer custody of the minor to the Department of Corrections.
In support of the revocation of probation and the commission of the minor to the Department of Corrections, the State argues that the trial judge made a specific finding that all other juvenile resources had been tried and that the minor had failed to respond to any of those resources. However, the record discloses that both the reports from Operation Breakout at Darrow Hall and the Champaign County Mental Health Center indicate that progress was being made with the minor. The record does not support the trial court's decision that the commission of the respondent to the Department of Corrections, Juvenile Division, was the only recourse available and therefore that decision cannot be sustained. The choice of a dispositional order in juvenile matters rests within the sound discretion of the trial court (In re Buchanan (1978), 62 Ill. App.3d 463, 379 N.E.2d 122.) That discretion was abused here.
For the foregoing reasons, the order of the trial court terminating the respondent's probation is reversed and this cause is remanded to the circuit court of Champaign County with directions to reinstate the minor's probation.
Reversed and remanded with directions.
REARDON, P.J., concurs.
Mr. JUSTICE GREEN, dissenting:
I do not agree that the only conclusion that could reasonably be drawn from the testimony of the school administrator was that his disturbance arose solely from his disappointment at being unable to control the minor. He stated in part:
"* * * Yes, I  did get a bit upset from the standpoint that usually I'm able to get [G.L.C.] to settle down. Well, [G.L.C.] never did, in my opinion. And I got a bit upset about that, because he had the pop bottle. At one point, I tried to physically take it. But knowing *414 [G.L.C.], that's not the best thing to do. So, uh, yes I was after I found out that  after I discovered there was no point in  [G.L.C.] at least was not trying to give me the cooperation that I repeatedly requested."
I deem the testimony sufficient for the trier of fact to have concluded that the administrator was also disturbed about the minor's possession of the pop bottle, his fear that the aggravated battery proposed by the minor might take place and the disrupting of the educational process that was taking place.
School was undisputedly in session at the time of the occurrence. The so called hallways were actually doorway corridors separating the classrooms from the hall and were stated by the administrator to be only about two feet in length. They thus furnished little insulation of the classroom from any disruption taking place anywhere in the corridor. The administrator stated that after the minor had opened one doorway, he told the minor he could not continue to "disrupt." When the minor testified, he was asked, "Were you on the various floors and rooms that the witness Kenny Meres testified to earlier?" The minor answered, "Yes."
I also consider the minor's admitted failure, without excuse, to report to justify a revocation under the particular circumstances of this case. In my opinion these circumstances also justify the trial court's decision to commit the minor to the Department of Corrections. Detailed enumeration of the circumstances is thus required.
The record presented begins with the filing of a supplemental petition on April 20, 1978. It appears that previously on March 10, 1978, the minor, having been found to have committed a burglary at school, was placed on supervision. In any event, on March 19, 1978, 9 days later, he burglarized another school room, stealing items from two girls' purses. The supplemental petition followed the incident and resulted in an order of May 3, 1978, finding him delinquent and making him a ward of the court. At a subsequent dispositional hearing a report of the probation officer was presented recommending two years "high risk" probation for the minor. It was supplemented by (1) a letter from the Department of Corrections recommending that the minor be permitted to participate in their Darrow-Hall Wilderness Stress Program, and (2) a report from the Champaign County Mental Health Center stating that since the minor's March 19 offense, he had become more cooperative and was making improvement. On May 23, 1978, the court placed the minor on "high risk" probation for two years with the requirement of daily reporting a condition of that probation.
The instant petition to revoke was filed October 10, 1978, and heard October 10, 1978, at which time the court found the allegations to be true. On October 26, 1978, after a dispositional hearing, probation was revoked *415 and commitment ordered. At that hearing, a lengthy dispositional report of the probation officer was presented. Defense counsel admitted its accuracy. It showed that respondent, after being placed on probation, had for the balance of that school year attended day school at the Youth Detention Center with good attendance and good behavior except for a few altercations with students and staff. The next fall he was permitted to attend Urbana High School until the incident causing revocation of his probation. On September 6, 1978, he started attending a store-front school operated by the school district. His attendance was poor. He had worked for two private employers both of whom considered the minor to be a good worker, but had nevertheless fired him for failure to appear for work and for a bad attitude, respectively. He later worked for CETA, a government project, where his employers described him as a reliable worker.
A report from Darrow-Hall indicated that the minor had injured his leg in the first nine days of the 42-day course and was "half hearted" thereafter, dropping out 12 days before the finish of the course. Some positive statements were made concerning his conduct but ended in the expression of a hope that the minor would be "more persistent" in his future endeavors. A report of the Champaign County Mental Health Center described the treatment being given and indicated that some progress was being made in attempting to help him "define the antecedents and consequences of his behavior." The report made no reference to the minor's general conduct nor the incidents for which probation was revoked. It did recommend that the minor continue to receive their services and that he consult a psychiatrist "to determine neurological or psychological abnormality."
The "strict probation" status requiring the minor to report daily was justified because of his commission of an additional burglary of a school room only nine days after his original dispositional hearing. His failure to fully comply with the reporting requirements was accompanied by additional failures. The conduct on August 30, even if it did not amount to a disturbance of the peace, was nevertheless serious and prevented his return to Urbana High School. But for the fortuitous circumstances that the minor did not find his intended victims, much more serious consequences were prevented. He had been fired from two jobs and had a poor attendance at the store-front school. He had failed to complete the Darrow-Hall Stress Course and was reported to have been half hearted after his injury. Although he may have made progress in defining "the antecedents and consequences of his behavior," he had not been able to control himself at the time of the August 30 incident. Under these circumstances the failure to report, although otherwise minor, was a sufficient ground to revoke probation.
*416 No indication was made that a private institution was available to which the minor might have been sent. Other than making commitment to the Department of Corrections, the only apparent alternative was for the court to continue the minor on the present probation. If this had been done, one might reasonably expect that the minor would tend to feel that he need not anticipate sanction for further misconduct and could continue with the present course of conduct. I do not interpret the reports from Darrow-Hall and the Champaign County Mental Health Clinic to indicate the progress ascribed to them by the majority. I deem the record to fully support the trial court's exercise of discretion.
For the foregoing reasons, I would affirm.